UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No: 05-11217-NG

James M.Ferland                          )
Plaintiff Pro Se,                        )
                                         )
                                         )
v.                                       )
                                         )
                                         )
Superintendent Paul Norton,              )
Deputy Kenneth Silva,Captain,            )
Slattery and Officer Jack                )
Crowley,                                 )
Defendants.                              )

## PLAINTIFFS'OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND TO DISMISS PLAINTIFF'S COMPLAINT

Now comes the Plaintiff James M.Ferland (collectively referred to as the "Plaintiff") and opposes the Defendants move to strike and to dismiss Plaintiff's amended complaint pursuant to F.R.Civ.P 12,15 & 56 and Local Rule 56.1.

In futherance of the Plaintiff's opposition to Defendant's motion to strike and to dismiss,the Plaintiff states the following:

## PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1. Plaintiff,who is a pro se prisoner in the care and custody of the Middlesex Sheriff's Office,commenced this action alleging that the Defendant's violated his constitutional rights. See Federal Summons & Complaint.

2. On November 30,2004,Plaintiff received a sentence of incarceration from the Middlesex Superior Court to be served at the Billerica House of Corrections ("BHOC").
   See Complaint,paragraph #4.

3. Plaintiff did state in his complaint that upon his commit-ment,he was placed in Cell I-4 of the Billerica "NEW MAN"

unit where the conditions were less than ideal. See **Complaint,**
**paragraph #5**

4.  Plaintiff filed no institutional grievances with respect to
    those supposedly poor conditions of confinement,because
    Plaintiff was merely using the statement about the cell
    condition as merely background,that is why plaintiff never
    filed a grievance  See **Honorable Judge Gertner's FUTHER**
    **MEMORANDUM AND ORDER** & **NOTICE OF ELETRONIC FILING.**

5.  On December 1,2004, at approximately 2:50pm.,Officer Edward
    Conley came to Plaintiiff's cell # I-4 and informed him that
    he was ordered to shake-down my cell. See **Disciplinary Report**
    & **Complaint,paragraph #8.**

6.  Officer Conley alledgedly found two(2) small "ROCK-LIKE" sub-
    stance that he stated in his Disciplinary Report that appeared
    to be "CRACK-COCAINE". **See Exhibit (A) Wightman v.Superintendent**
    **MCI Walpole,19 Mass.App.422,475 N.E.2d 85,88-89(Mass.App.1985)**

7.  Plaintiff did deny ownership or possession of the substance and
    plaintiff demanded to take a urine test.

8.  After denying ownership of substance,I was handcuffed and esc-
    orted to DDU/Administrative Segregation Cell # I-13

9.  Plaintiff does not know the exact time,but officer Artie Remollow
    can to plaintiff's cell # I-13 and escorted me to the shower/
    holding area. Officer Remollow strip-searched plaintiff and at
    that time plaintiff gave a urine sample,the date was 12/1/04.

10. Plaintiff provided a urine on December 1,2004,not on December
    2,2004,as the defendants contend in their statement of undis-
    puted facts. See **Exhibit (B) L.C.C.C. Urine Test Results,Time &**
    **Date.**

11. Inmate Ferland's urine sample was not tested until the next day
    December 2,2004  See **Exhibit (B)**

12. Plaintiff had no knowledge that his urine tested positive for
    marijuana as early as December 3,2004,as stated by the defend-
    ants in their statement of undisputed facts.Plaintiffonly stated
    in his appeal that he would be negative for cocaine. See **Exhibit**
    **(C)  Plaintiff's Appeal from DDU Sentence.**

13. Even though plaintiff's urine registered "-34",which means the results is negative.Defendants are trying to assert that plaintiff ingested cocaine within the last twenty-four(24) to seventy-two(72)hours,which means that I was on the streets,not incarcerated at the time. See **Exhibit(B)**

14. Plaintiff was charged with code #25 & #36 and placed in DDU on December 1,2004.

15. The defendants did not predicate institutional charge(code #36) on violation of chapter 94c,because plaintiff's urine tested positive for the presence of marijuana.Subsequently the defendants predicated institutional charge(code #36) for alledgedly possessing "CRACK COCAINE". See **Exhibit(D) Officer Conley's Disciplinary Report.**

16. On December 2,2004,I was formally notified by Deputy Kenneth Silva that I would be given a Disciplinary Hearing on 12/3/04. At that time Deputy Silva also read me my Miranda Rights and informed me that outside charges would be persued for possession of cocaine not possession of marijuana.I told him that I understood my Miranda Rights and that I was pleading not-guilty to all charges.

17. According to **C.M.R. Policy 430 Inmate Rules & Discipline,** Whenever an inmate is alledged to have committed a crime which may be referred to the **District Attorney's Office** for prosecution and the inmate pleads not-guilty to the charge(s).The **Disciplinary Board shall conduct a Fact-Finding Hearing,**according to **C.M.R. Policy 430.14,**during which it may consider written,oral and physical evidence.All evidence considered by the Disciplinary Board shall be presented in the presence of the inmate. See **C.M.R. Policy 430,Disciplinary mandates that were violated.**

18. No Fact-Finding Hearing waseyer held and no evidence was ever presented to the inmate Ferland.The only evidence presented at the Disciplinary Board Hearing consisted solely of Officer Conley's Disciplinary Report.

19. On December 3,2004,the plaintiff's Disciplinary Board Hearing was held and comprised solely of one member,(**Officer Jack Crowley.**Supposedly the officer that searched cell # I-4,before the plaintiff was placed in that cell upon his arrival to the Billerica House of Corrections.**Violating their own policy** by not having an imparial hearing officer preside of plaintiffs Disciplinary hearing.

20. Consequently,Inmate Ferland received two (2) consecutive ten (10) day sentences to the DDU.After the hearing I received a **Disciplinary Board Hearing Summary** stating only **"Guilty"** based solely on the Officer's Disciplinary Report.There was no written summary and statement for the reason for the sanctions.

21. Consistant with institutional policy,I filed an administrative appeal with **Defendant,Superintendent Paul Norton**,pointing out the lack of evidence to support the charge that I possessed **Crack Cocaine** and the failure of the Disciplinary Board to present the plaintiff with a written statement for the reason for the finding of **"Guilty". Defendant Norton** subsequently denied my appeal. **See Exhibit (C) Plaintiff's Appeal.**

22. On December 7,2004,the defendants finally submitted the "rock-like" substance to the State Police Lab in Sudbury,Massachusetts for analysis.Four (4) days after the plaintiff was found guilty at his Disciplinary Board Hearing. **See Narcotic Custody Form.**

23. On December 20,2004,The day I completed my 20 day sentence in DDU.I was not released,but I was given a **"Notice of Temporary Assignment to Administrative Segregation** for an additional twenty-one (21) days.The order was signed by Captain Kevin Slattery.I ultimately served a total of fourty-four (44) days In DDU and Administrative Segregation.I was not classified to Administrative Segregation days before my release from DDU,as the defendants stated in their statement of undisputed facts. See Exhibit (E)  **Middlesex Sheriff's Office,Segregation Classification Form** dated 12/23/04.

24. On January 12,2005, Defendant Superintendent Paul Norton approved Plaintiff's classification from the Special Management's Administrative Segregation Unit back to general population. **See Exhibit (F) Segregation Classification Form dated 1/12/05**

25. On February 7,2005, the Crime Lab testing revealed that the "rock-like" substances found in plaintiff's cell were negative for cocaine.**See Drug Certification dated February 9,2005.**

## A.        ARGUMENT

I. Defendant's motion to strike Plaintiff's amended complaint must be allowed because the proposed amendment would be futile and because Plaintiff failed to obtain judicial leave to file the amended complaint pursuant to F.R.Civ.P 15

As a threshold matter,Plaintiff understands that according to the Rules of Civil Procedures,the rules do bind pro se litigants as they bind other litigants.I understand that there is no judicial obligation to protect me a pro se plaintiff from his lack of legal training.

Therefore ,the plaintiff is confident that his complaint will "stand on it's own merits" without any revision by the courts. The courts do not have to "recast" plaintiff's complaint in the form that corresponds to the judge's veiw of what claims the plaintiff intended ,because the plaintiff adequately set forth the claims he stated in his original and his amended complaint. Also plaintiff's proposed amendment does not constitute futility and for that reason does not form an adequate basis for denial of plaintiff's amendment.

Based on the reasons stated herein,Defendant's F.R.Civ.P 12(f) motion to strike must be denied. Plaintiff is not legally constrained from challenging his classification to Administrative Segregation on due process grounds. See: Sandin v.Conner 515 U.S. 472,478 (1995) Mass. law allows prison officials discretion to transfer prisoners to alternate facilities for:"Whatever reason or for no reason at all", but O'Malley v.Sheriff of Worcester County 415 mass 132,138 (1993) We have acknowledged that Massachusetts Regulations containing "explicitly mandatory language in connection with requiring speciific substantive predicates" can create protected liberty interests, Lamoureux v.Superintendent,Mass.Correctional Institution,Walpole 390 mass.409,417,456 N.E.2d 1117 (1983),quoting Hewitt supra,459 U.S. at 472,103 S.Ct. at871.

The regulations of the department state explicitly that "an inmate may be placed in isolation only pursuant to a sanction imposed by a disciplinary board" andonly after the inmates appeal has been decided or waived.103 code Massachusetts Regulations § 430.20 (1978). Additionally,those sections of the regulations pertaining to County Correctional Facilities provide that "that no inmate shall be placed in disciplinary isolation to [sic] compliance with procedures set forth in 103 CMR 943.03" 103 code Massachusetts Regulations § 943.05(1) (1979) The language is mandatory,not permissive.Thus,these regulations make clear that isolation may not be imposed arbitrarily or at the unbridled discretion of prison officials.We hold,[415 Mass.138] therefore,that these regulations bestow on inmates

a protected liberty interest in avoiding disciplinary isolation.The United States Supreme Court has recognized liberty interests created by state law and enforceable by inmates in such areas as **Adminisrative Segregation,Hewitt,supra 459 U.S.at 472,103 S.Ct.at 871.**

Plaintiff did state a claim for the twenty(20)days,not the ten(10)days he spent in DDU.He also stated a claim for the additional twenty-one(21)days he spent in Administrative Segregation, these peticular confinements did create sufficent liberty interests that are actionable under § 1983.

As to the amended complaint,plaintiff mailed copies of amended complaint to defendant's attorney & to Honorable Judge Nancy Gertner from the Billerica House of Corrections on October 13,2005,before defendant filed his answer and did not violate **Rule F.R.Civ.P.15.**Also when plaintiff submitted his amended complaint along with the complaint was a request for the courts permission to amend his complaint.

Based on these reasons,the defendants motion to strike and motion to dismiss Plaintiff's amended complaint must be denied.

II.    **As discussed above,Defendant's motion to dismiss must be denied because Plaintiff's detention in the DDU and Administrative Segregation did not involve federally protected liberty interests**

Due process was not satisfied because the evidence presented at plaintiff's disciplinary board hearing did not support the Disciplinary Boards decision (evidence: Officer Conley's Disciplinary Report).Plaintiff did not ignore the fact that he knew at the time of his Disciplinary Board Hearing that his urine tested positive(+) for marijuana.Plaintiff did not learn of the positive(+) test results for marijuana until some time in October of 2005,when plaintiff obtained a copy of his urine test results from Attorney John Goggin who works at the Billerica House of Corrections as the inmates Legal aid.Thus,defendants did not "possess independent and permissible evidence of guilt"

Furthermore,inmate ferland's consecutive ten(10)day sentences in DDU constituted an infringement of his due process liberty interests,as for plaintiff's classification to Administrative Segregation

from DDU,Plaintiff's complaint did state a claim. See; Argu-
ment # I. Addditionally plaintiff's complaint must not be dismissed
because he did produce evidence that his Disciplinary sanctions
had been expunged or invalidated in another Administrative Proceeding
Plaintiff was not mistaken when he contended that the "drug charges"
were dropped.He was not referring to the Crime Lab's February anal-
ysis,but the Legal Service Memorandum from Attorney Lee Gartenberg
dated January 14,2005.

    Plaintiff also had no knowledge of the urine test results at
the time of his Disciplinary Hearing,plaintiff only knew he would
be negative(-) for cocaine not because of his urine test results
but because of his activities the days before his incarceration.
See: Plaintiff's Appeal of DDU sentence dated: December 3,2004.

        Based on the foregoing arguments and authorities,Defendant's
motion to dismiss must be denied.

    III.    Should this Honorable Court allow Plaintiff's amendment
            for the reasons stated above,Defendant's motion to dismiss
            Plaintiff's civil rights and emotional distress claims
            must be denied because the Defendant's,who are being sued
            in their individual capacities,are not immune from suit
            pursuant to the 11th Amendment and G.L.c.258,§ 10(c)


    Accordingly,Plaintiff's complaint,paragraph #24 "the relief
plaintiff did allege the defendants violated his constitutional
rights by improperly detaining him.Plaintiff did suffer "emotional
stress",In plaintiff's amended complaint,plaintiff sued Superinte-
ndent Paul Norton in his individual capacities for actions under
the color of state law.

    Furthermore,he also sued Deputy Kenneth Silva,Captain Slat-
tery and Officer Jack Crowley "as they were parties to the Disci-
plinary tribunal" thus when plaintiff amended his complaint,he named
the defendant's in thier individual capacities for thier actions
under the color of the law.Plaintiff's amended complaint must be
allowed because he is suing the defendant's in thier individual cap-
acities under § 1983,(state officials may be held personally liable
for damages because of actions taken in thier official capacities

only if they are sued in thier individual capacities. 42 U.S.C.A. § 1983. Therefore, these public employees are "persons" liable under § 1983 and under the Massachusetts Tort Claims Act for Civil Rights violations. Plaintiff did not fail or need to prove the additional requirements set forth in the state statue that the defendants actions deprived the plaintiff of either a constitutional Right or any other right by"threats, intimidation or coercion, because defendants are being sued in thier individual capacities not thier official capacities. Defendants are not insulated from liability for that reason.

Based on the foregoing arguments and authorities, Defendant's motion to dismiss must be denied.

IV.  **Plaintiff's action must be allowed to the extent that it seeks monetary damages against the Defendant's in their individual capacities for actions under the color of state law**

If a state official is sued in his official capacity, then the plaintiff's recovery is limited to equitable relief only. but in this case, in the amended complaint the defendants are being sued in their individual capacities for actions under the color of state law, Moreover, as mentioned above, the complaint makes reference to the defendant's in their individual capacities.

Accordingly, Plaintiff's complaint must be allowed to the extent it seeks monetary damages against the Defendant's in their individual capacities.

Respectfully Submitted

James M. Ferland
Plaintiff/Pro Se

11/11/05
Dated

# EXHIBIT 

United States District Court

District of Massachusetts

Notice of Electronic Filing

The following transaction was received from PSSA1, entered on 8/1/2005 at 8:16 AM EDT and filed on
7/29/2005
Case Name: Ferland v. Norton et al
Case Number: 1:05-cv-11217
Filer:
Document Number: 6

Docket Text:
Judge Nancy Gertner : MEMORANDUM AND ORDER entered:... it is hereby ORDERED that the clerk shall
issue a summons as to Superintendent Paul Norton, and the United States Marshal shall serve a copy of
the complaint, summons, and this order as directed by the Plaintiff with all costs of service to be advanced
by the United States Marshal's Office. It is FURTHER ORDERED that Plaintiff's allegations concerning cell
conditions upon arrival at the prison facility shall not be deemed to present a separate cause of action in
this case.(PSSA1)

The following document(s) are associated with this transaction:

Document description:Main Document
Original filename:yes
Electronic document Stamp:
[STAMP dcecfStamp_ID=1029851931 [Date=8/1/2005] [FileNumber=1070979-0]
[31c4b7fae6d48021a9ba32a70b567585358d217a43950478921a21e0fbc32690f67f
0806a012169ac103837badf10bb147b8419c86e325ca150ec015aa9b9e8d]]

1:05-cv-11217 Notice will be electronically mailed to:

1:05-cv-11217 Notice will not be electronically mailed to:

James M. Ferland
Billerica House of Correction
269 Treble Cove Road
Billerica, MA 01862

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
JAMES M. FERLAND,                    )
            Plaintiff                )
                                     )
v.                                   )        C.A. No. 05-11217-NG
                                     )
PAUL NORTON, et. al.,                )
            Defendants.              )
                                     )

## FURTHER MEMORANDUM AND ORDER

GERTNER, D.J.

Plaintiff James Ferland, a state prisoner at the Billerica House of Corrections, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 in connection with disciplinary proceedings against him, arising out of a search and seizure of drugs from Plaintiff's cell. Plaintiff denied possession and use of any drugs, and asserts his was denied due process with respect to the disciplinary hearing. He claims that after 44 days of segregation, Plaintiff was released and later ascertained that the drug charges had been dropped, and that the drug test taken prior to the disciplinary hearing, which he was unable to use in his defense, was negative.

On June 30, 2005 a Memorandum and Order (#4) issued directing Plaintiff to show cause within forty-two (42) days why the claim against Defendant Superintendent Paul Norton, and the claim regarding cell conditions, should not be dismissed. Subsequently, Plaintiff filed a Show-Cause response asserting compliance with Rule 8(a) of the Federal Rules of Civil Procedure. Additionally, Plaintiff's alleges Defendant Norton is liable for "his inaction in curing deficiencies in the disciplinary proceedings of which he was aware of." Response at 1. Plaintiff also contends Defendant failed to conduct "at least a minimal investigation to determine

whether [there] was any merits to plaintiff's appeal." Id. at 2.  He also asserts that he has

exhausted his administrative remedies with respect to the disciplinary charges brought against

him for purported drug use.

     With respect to his complaints concerning cell conditions upon his arrival, Plaintiff states

that he intended these statements for background purposes only, and he did not intend to raise

these in his Complaint as a separate and distinct § 1983 cause of action.

     In view of Plaintiff's filings, the Court will permit a summons to issue against Defendant

Norton at this time.

     Accordingly, it is hereby ORDERED that the clerk shall issue a summons as to

Superintendent Paul Norton, and the United States Marshal shall serve a copy of the complaint,

summons, and this order as directed by the Plaintiff with all costs of service to be advanced by

the United States Marshal's Office.  It is FURTHER ORDERED that Plaintiff's allegations

concerning cell conditions upon arrival at the prison facility shall not be deemed to present a

separate cause of action in this case.


SO ORDERED.

                               /s/ Nancy Gertner
                               NANCY GERTNER
DATED: July 29, 2005            UNITED STATES DISTRICT JUDGE

# The Commonwealth of Massachusetts
## Middlesex Sheriff's Office

## DISCIPLINARY REPORT

*TO BE COMPLETED BY THE DISCIPLINARY OFFICE*
Major: _____ Minor: _____ Report #: _____ Date: _____

Disciplinary Officer: _____

FACILITY: Billerica
UNIT: Main Building
CODES: 25,36

INMATE:   Ferland,      James

I. D. #:   106900

### DESCRIPTION OF OFFENSE:

On 12-1-04 at approx. 2:50 p.m. Deputy Silva asked me to shakedown cell I-4. The inmate who occupies this cell is James Ferland #106900. The inmate was searched before he left the cell and then escorted to the shower room. During the search of this cell two small "rock's" that appeared to be crack cocain,were wraped in plastic were found in the corner of the bottom shelf. This evidence was given to Deputy Silva and inmate Ferland was escorted to seg.

_____
Signature of Reporting Officer

_____
Name of the Reporting Officer

12/1/04 3:19 PM
Date and Time Reported

| | | |
|---|---|---|
| Inmate Placed on Lock-in Status? | Yes: ✓ No: _____ | Unit: DOU |
| Copy of Report Served to the Inmate? | Yes: ✓ | |
| Informal Action Taken by Supervisor: | | |

_____
(Supervisor's Signature)

12/1/04
Date

Citation/Title
475 N.E.2d 85, 19 Mass.App.Ct. 442, Wightman v. Superintendent, Massachusetts
Correctional Inst., Walpole, (Mass.App.Ct. 1985)

**\*85**   475 N.E.2d 85

19 Mass.App.Ct. 442

Appeals Court of Massachusetts,
Norfolk.

Robert WIGHTMAN
v.
SUPERINTENDENT, MASSACHUSETTS CORRECTIONAL INSTITUTION, WALPOLE et al. (FN1)
Argued Nov. 21, 1984.

Decided March 5, 1985.

  Correctional institution inmate sought judicial review of decision of
disciplinary board that prisoner had committed offense of possessing "angel
dust" and hence was punishable by "isolation time."   The Superior Court
Department, Norfolk County, John D. Sheehan, J., granted summary judgment to
defendant officials, and the inmate appealed.  The Appeals Court, Kaplan, J.,
held that unsworn statement by person professing no particular experience with,
or technical understanding of drug, who conceded on face of report that
substance which he assertedly found on person of plaintiff prisoner was
"unknown," and who did no more than express a "belief" that same was "angel
dust" was insufficient to sustain the board's decision.

  Summary judgment vacated and case remanded with instructions.

West Headnotes

[1]   Prisons ☜13(10)

      310 ----
         310k13 Custody and Control of Prisoners
           310k13(7) Requisites of Proceedings
            310k13(10) Review and Judicial Supervision.

  Prisoner's pro se and inartfully drawn complaint complaining of disciplinary
action was to be read under statute as "civil action in the nature of
certiorari" bringing up administrative record and questioning legality of
official conclusion.  M.G.L.A. c. 30A, §§ 1(2), 1A;  c. 249, § 4.

[2]   Prisons ☜13(7.1)

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

475 N.E.2d 85, 19 Mass.App.Ct. 442, Wightman v. Superintendent, Massachusetts
Correctional Inst., Walpole, (Mass.App.Ct. 1985)

    310 ----
       310k13 Custody and Control of Prisoners
        · 310k13(7) Requisites of Proceedings
          310k13(7.1) In General.

          (Formerly 310k13(7))

  State Administrative Procedure Act does not apply to disciplinary proceedings
in correctional institutions. M.G.L.A. c. 30A, §§ 1(2), 1A; c. 249, § 4.

[3]  Prisons ☜13(10)

    310 ----
       310k13 Custody and Control of Prisoners
        310k13(7) Requisites of Proceedings
          310k13(10) Review and Judicial Supervision.

  In prisoner's proceeding taken as "civil action in the nature of certiorari"
bringing up administrative record and questioning legality of official
conclusion that prisoner had committed offense punishable by "isolation time,"
it was logical and orderly, and perhaps required, to take up first the claimed
violation of local law in form of regulations.

[4]  Prisons ☜13(8)

    310 ----
       310k13 Custody and Control of Prisoners
        310k13(7) Requisites of Proceedings
          310k13(8) Notice and Hearing;  Summary Proceedings.

  Defining evidence admissible in prison disciplinary board hearing as that kind
of evidence on which "reasonable persons are accustomed to rely in the conduct
of serious affairs" met requirements in that effect of definition was that
agency finding must be supported by substantial evidence. M.G.L.A. c. 30A, §
11(2);  c. 124, § 1(q).

[5]  Administrative Law and Procedure ☜741

    15A ----
       15AV Judicial Review of Administrative Decisions
        15AV(D) Scope of Review in General
          15Ak741 In General.

  Standard of judicial review under certiorari statute takes its color from
nature of administrative action that is being examined. M.G.L.A. c. 249, § 4.

[6]  Administrative Law and Procedure ☜749

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

475 N.E.2d 85, 19 Mass.App.Ct. 442, Wightman v. Superintendent, Massachusetts
Correctional Inst., Walpole, (Mass.App.Ct. 1985)

    15A ----
        15AV Judicial Review of Administrative Decisions
          15AV(D) Scope of Review in General
          15Ak749 Presumptions.

   In civil action in nature of certiorari, court was to carry out its function
by setting itself up somewhat at distance from agency, by exercising kind of
Olympian detachment, which was to say that agency was to have benefit of any
genuine doubt as to its conformance to the constraints laid upon it.  M.G.L.A.
c. 249, § 4.

[7]  Prisons ☞13(7.1)

    310 ----
        310k13 Custody and Control of Prisoners
          310k13(7) Requisites of Proceedings
          310k13(7.1) In General.

          (Formerly 310k13(7))

   Unsworn statement by person professing no particular experience with, or
technical understanding of drug, who conceded on face of report that substance
assertedly found on person of plaintiff prisoner was "unknown," and who did no
more than express a "belief" that same was "angel dust" was insufficient to
sustain prison disciplinary board's decision that prisoner had committed offense
of possession of such drug and that it was punishable by "isolation time."

[8]  Prisons ☞13(7.1)

    310 ----
        310k13 Custody and Control of Prisoners
          310k13(7) Requisites of Proceedings
          310k13(7.1) In General.

          (Formerly 310k13(7))

   Regulations governing disciplinary proceedings in federal prisons do not
permit conviction on basis of mere accusatory instruments.

[9]  Prisons ☞13(8)

    310 ----
        310k13 Custody and Control of Prisoners
          310k13(7) Requisites of Proceedings
          310k13(8) Notice and Hearing;  Summary Proceedings.

   In prison disciplinary cases, where testing of suspected narcotic or other
dangerous drug is simple, and at hand, agency may prefer to use it, but in many

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

475 N.E.2d 85, 19 Mass.App.Ct. 442, Wightman v. Superintendent, Massachusetts
Correctional Inst., Walpole, (Mass.App.Ct. 1985)

cases drugs will be identifiable, without scientific analysis, by testimony of
lay persons with fair experience of them, whether they be officers making
disciplinary reports or board members or others, and evidence of circumstances
in which substances were discovered may assist in proof.

[10] Prisons ☜13(8)

    310 ----
        310k13 Custody and Control of Prisoners
        310k13(7) Requisites of Proceedings
        310k13(8) Notice and Hearing;  Summary Proceedings.

    Live testimony of officer filing prison disciplinary report may enhance value
of report, and sworn statements, live or in writing, are better than unsworn.

    *86  Robert Wightman, pro se.

    Stephen G. Dietrick, Boston, for defendants.

    Before ARMSTRONG, KAPLAN and SMITH, JJ.

    KAPLAN, Justice.

    The plaintiff, Robert Wightman, an inmate at the Massachusetts Correctional
Institution, Walpole, sued the superintendent of the institution and others in
Superior Court, seeking judicial review of a decision of a disciplinary board
(affirmed on administrative appeal) that he had committed the offense of
possessing "angel dust" and hence was punishable by "isolation time."   Because
the record of the proceedings at the institution is inadequate to support the
decision, we reverse a summary judgment entered below in favor of the defendant
officials.   The case is to stand for possible further development.

    [19 Mass.App.Ct. 443] The record, as shown by the materials presented on the
motion for summary judgment, starts with a handwritten disciplinary report of
June 5, 1982, on a standard form (regulations of the Department of Correction,
103 Code Mass.Regs. § 430.08 [1978] ), signed by the defendant correction
officer.   It states: (FN2)  "On the above date and place at approximately 10:45
PM I c/o Ford did strip search inmate Wightman, and did find on his possession
(pants pocket) four packages and one joint, of an unknown substance (believed to
be angel dust).   I c/o Ford then turned this into inner control.   (Inmate
Wightman had a  *87  visit this night.)"   The offense charged by the report,
marked "Major," was "Possession of an unauthorized controlled substance" (this
appears as number 10 of inmates' punishable offenses listed at § 430.22).

    A copy of the disciplinary report was furnished to the plaintiff together with
a "Notice of Disciplinary Hearing" (§ 430.11) stating that a disciplinary board
would hold a hearing on the report on June 21, 1982, and inviting the plaintiff

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

475 N.E.2d 85, 19 Mass.App.Ct. 442, Wightman v. Superintendent, Massachusetts Correctional Inst., Walpole, (Mass.App.Ct. 1985)

to attend. A report of the hearing (§ 430.17[1] ) indicates that it was held on the date set, before a board of three, one of whom was the defendant chairman. The plaintiff was in attendance. The substance of the hearing is described thus. "Plea: Not guilty. No comment by inmate. Finding: Guilty. Sanction and recommendations: 15 day Iso. Reasons for sanction and recommendation: D-report taken to be accurate and truthful--severity of this incident warrants strict sanction."

Informed that isolation was to begin on July 5, 1982, the plaintiff on that day wrote to the superintendent protesting that he had not received the board's report, which by regulations he was entitled to have within two weekdays after the close of the hearing (§ 430.17[1] ); thus he had not been able to take a proper appeal to the superintendent, which was required to be filed within five days after receipt of the hearing report (§ 430.18[1] ). In response, the superintendent treated the letter of July 5, 1982, as the taking of an appeal (meanwhile suspending[19 Mass.App.Ct. 444] the isolation time); and on July 27, 1982, he denied the appeal, i.e. affirmed the action of the disciplinary board. The plaintiff served fifteen days of isolation commencing on August 2, 1982.

[1][2] Although inartfully drawn--the plaintiff appears pro se--and innocent of reliance on G.L. c. 249, § 4, the complaint in the present action is to be read under the statute as a "civil action in the nature of certiorari" (FN3) which brings up the administrative record (FN4) and questions the legality of the official conclusion. See *Hill v. Superintendent, Mass. Correctional Inst., Walpole,* 392 Mass. 198, 199 n. 2, 466 N.E.2d 818 (1984), cert. granted, 469 U.S. 1016, 105 S.Ct. 428, 83 L.Ed.2d 355 (1984); *Cepulonis v. Commissioner of Correction,* 15 Mass.App. 292, 293, 445 N.E.2d 178 (1983). The main charges of illegality (pieced out of the pleading) are that the conviction did not comport with the applicable regulations of the Department of Correction and in any event was unconstitutional as violating State and Federal due process guarantees.

[3] It is logical and orderly in the present case to take up first the claimed violation of local law in the form of the regulations. See *Royce v. Commissioner of Correction,* 390 Mass. 425, 426, 456 N.E.2d 1127 (1983). Not only is this sequence of analysis generally logical; in some situations, at least, it may be required, as suggested by Justice Stevens, concurring in *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 2089-2091, 80 L.Ed.2d 721 (1984). In fact the present appeal is disposed of without need to invoke either constitution.

[4] Regulations adopted pursuant to G.L. c. 124, § 1(q ), provide, as far as material here, that an inmate appearing at a disciplinary board hearing, and pleading not guilty, may choose [19 Mass.App.Ct. 445] to remain silent (§ 430.14[1] ); that the burden of proof is on the "proponent" of a disciplinary report and a disciplinary board is to make its finding on the basis of the "preponderance" of the evidence (§ 430.16[1] ), so that, **88** "for conviction",

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

475 N.E.2d 85, 19 Mass.App.Ct. 442, Wightman v. Superintendent, Massachusetts
Correctional Inst., Walpole, (Mass.App.Ct. 1985)

the proof need not be brought to the level of "beyond a reasonable doubt" as
required for ordinary criminal convictions; and, finally, that, while the board
is not bound by courtroom rules of evidence, it may admit and accord probative
value only to the kind of evidence on which "reasonable persons are accustomed
to rely in the conduct of serious affairs" (§ 430.13[3] ).  The latter
definition equates with the one set out in the State Administrative Procedure
Act, G.L. c. 30A, § 11(2), (FN5) and the effect of the definition is that the
"agency finding must be supported by substantial evidence." *Goodridge v.
Director of the Division of Employment Security,* 375 Mass. 434, 436, 377 N.E.2d
927 (1978). (FN6)

    [5][6] As has now been repeatedly held, and lastly in this court in the case
of *Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of
Randolph,* 19 Mass.App. 296, 473 N.E.2d 1154 (1985), the standard of judicial
review under the certiorari statute takes its color from the nature of the
administrative action that is being examined.  See *Caswell v. Licensing
Commission for Brockton,* 387 Mass. 864, 877, 444 N.E.2d 922 (1983); *Cepulonis,*
15 Mass.App. at 293, 445 N.E.2d 178.   Here the cue is the agency's own
definition of admissible evidence or--what may amount to virtually the same
thing--the derived description of the weight of the proof required to support
the agency's finding.  Thus we have to consider on either score the adequacy of
the accusatory document--the disciplinary report of the correction officer--upon
which alone the disciplinary board rested in reaching its decision.   In
examining this matter we do not ask whether as board members[19 Mass.App.Ct. 446
] (or superintendent) we would or would not have received a given document as
complying with the regulation or as proof enough for conviction.  We carry out
our function by setting ourselves somewhat at a distance from the agency, by
exercising a kind of Olympian detachment.  This is to say that the agency is to
have the benefit of any genuine doubt as to its conformance to the constraints
laid upon it.  See *Cepulonis,* 15 Mass.App.Ct. at 295, 445 N.E.2d 178.

    [7][8] Considered even with this bias, the agency's action cannot stand.  Here
we have an unsworn statement by a person professing no particular experience
with, or technical understanding of the drug, who concedes on the face of the
report that the substance is "unknown," and who does no more than express a
"belief."   True, the officer states that he personally retrieved the substance
and thus must have seen it, but that does not carry the matter much further.
Our view that such an accusatory statement, standing alone, is not adequate
evidence, and is insufficient ground for the board's finding herein, is
confirmed by decisions of courts elsewhere reviewing like findings of prison
boards.  See *Barker v. State,* 437 So.2d 1375 (Ala.Cr.App.1983); *Jones v. Smith,*
120 Misc.2d 445, 451-452, 466 N.Y.S.2d 175 (N.Y.1983), aff'd, 101 A.D.2d 705,
475 N.Y.S.2d 809 (N.Y.1984); *Matter of Kincaide,* 86 A.D.2d 893, 447 N.Y.S.2d
521 (N.Y.1982); *Matter of Jennings,* 99 A.D.2d 635, 636, 472 N.Y.S.2d 195
(N.Y.1984); *Garcia v. Lefevre,* 102 A.D.2d 1004, 1005, 477 N.Y.S.2d 862
(N.Y.1984); *State ex rel. Meeks v. Gagnon,* 95 Wis.2d 115, 122, 289 N.W.2d 357
(Ct.App.1980); *Green v. Nelson,* 442 F.Supp. 1047, 1058 (D.Conn.1977).  (FN7)

© 2004 West, a Thomson business.  No claim to original U.S. Govt. works.

475 N.E.2d 85, 19 Mass.App.Ct. 442, Wightman v. Superintendent, Massachusetts
Correctional Inst., Walpole, (Mass.App.Ct. 1985)

Although, as earlier mentioned, we need not reach any constitutional issues, it
is instructive that the constitutional requirement of the leading case of *Wolff
v. McDonnell,* 418 U.S. 539, 563, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974),
that prison boards shall provide "a written **\*89.** statement of the factfinders
as to the evidence relied upon" in reaching decisions, (FN8) has on occasion
itself been held violated where the [19 Mass.App.Ct. 447] evidence referred to
has consisted merely of a report such as the one we have at bar. See *Hayes v.
Walker,* 555 F.2d 625, 631-633 (7th Cir.), cert. denied, 434 U.S. 959, 98 S.Ct.
491, 54 L.Ed.2d 320 (1977); *Chavis v. Rowe,* 643 F.2d 1281, 1286-1287 (7th Cir.)
, cert. denied sub nom. *Boles v. Chavis,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d
225 (1981). Cf. *McCollum v. Miller,* 695 F.2d 1044, 1048-1049 (7th Cir.1983);
*Green,* 442 F.Supp. at 1058.    Also instructive is the fact that the regulations
governing disciplinary proceedings in Federal prisons do not permit conviction
merely on the basis of such accusatory instruments. See 28 C.F.R. §§ 541.17(f),
541.17(i) (1984).

[9][10] We hardly need to add that the upshot of our decision in the present
case is not that laboratory or other testing will be needed in all future drug
cases where the inmate chooses to put the "proponent" to its proof. See *Barker,*
437 So.2d at 1376.   Where testing is simple, and at hand, of course the agency
may prefer to use it. But in many cases, no doubt, the drugs will be such as to
be identifiable, without scientific analysis, by the testimony of lay persons
with fair experience of them, whether they be officers making the disciplinary
reports or board members or others. Evidence of the circumstances in which the
substances were discovered may assist in the proof. It may be well to put the
actual seized drugs before the board at the time of hearing. Live testimony of
the officer filing the disciplinary report may enhance the value of the report,
and sworn statements, live or in writing, are better than unsworn.

The point of our present decision is that the disciplinary report was "not
self validating." See *McCollum,* 695 F.2d at 1049.

The summary judgment is vacated, and the case is remanded to the Superior
Court.  Within thirty days of the going down of the rescript, the defendants
will signify to the judge of the Superior Court whether they propose to
reinstitute a hearing before a disciplinary board and seek to offer additional
proof.  If the defendants signify in the negative, it will be open to the
plaintiff to move for relief which will include a direction to the defendants to
cause any record of the plaintiff's conviction to be expunged.  If the
defendants signify in the affirmative, the [19 Mass.App.Ct. 448] judge of the
Superior Court will remand the matter to the agency for appropriate action
there.  Thereafter, if necessary, further proceedings consistent with this
opinion will be had in the Superior Court.

*So ordered.*

(FN1.) The chairman of the disciplinary board and a named correction officer.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

475 N.E.2d 85, 19 Mass.App.Ct. 442, Wightman v. Superintendent, Massachusetts Correctional Inst., Walpole, (Mass.App.Ct. 1985)

(FN2.) We take the liberty of improving on the punctuation and capitalization of the original.

(FN3.) The State Administrative Procedure Act does not apply to these disciplinary proceedings in correctional institutions. G.L. c. 30A, §§ 1(2), 1A. (However, we make analogical use of one of the Act's provisions below in this opinion.)

(FN4.) There is no dispute here about what the official record consists of; hence we need not consider the argument that the superintendent's affidavit setting out or referring to the record is not on "personal" knowledge. Compare Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). We limit ourselves to the record and disregard averments by the superintendent such as that inmates have used the "ploy" that they have not received notice of the action of the disciplinary board.

(FN5.) "Evidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." G.L. c. 30A, § 11(2), inserted by St.1954, c. 681, § 1.

(FN6.) The previous regulations (1975) spoke of "reliable" evidence and the *Cepulonis* case discussed whether that might betoken a standard somewhat lower than "substantial." 15 Mass.App. at 295-296, 445 N.E.2d 178.

(FN7.) In *Kincaide* and *Jennings* tests had been carried out on the drugs, but the court thought not enough had been shown about the procedures used in the testing.

(FN8.) 103 Code Mass.Regs. § 430.17(1)(a) (1978), requires such a statement.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

P. 288    J. URINALYSIS, POLYGRAPHY AND OTHER SCIENTIFIC TESTS

SELF
LITIGATION
BOOK 2521. WILLIAMS VS STATE 461 So.2d 1335, 1338 (ALA CRIM-
APP) UNQUALIFIED OFFICER'S STATEMENT THAT MATERIAL
"APPEARED TO BE MARIJUANA" WAS NOT SUBSTANTIAL
#22 > EVIDENCE. CERT DENIED 461 So.2d 1339

     252 2. WRIGHTMAN VS SUPERINTENDENT MASS. CORRECTIONAL
INSTITUTION WALPOLE. 19 MASS APP 422, 475 N.E 2d
85, 88-89 (MASS APP 1985) STATEMENT BY UNQUALIFIED
#22 > PERSON THAT HE "BELIEVED" AN UNKNOWN SUBSTANCE
TO BE "ANGEL DUST" WAS INSUFFICENT TO SUPPORT
A DRUG CONVICTION

PAGE 280 H. IMPARTIAL TRIBUNAL

     211  I. HODGES VS SCULLY, 141 A.D. 2d 729, 529 N.Y.S.
2d 832, 834 (N.Y APP. DIV. 1988) A HEARING OFFICER
WHO ALREADY HAD A WRITTEN AND SIGNED DISPOSITION
conflict
see      IN FRONT OF HIM WHILE HE CONDUCTED THE HEARING
Crowley  COMMITTED A "PATENT VIOLATION" OF THE RIGHT OF
notes    IMPARTIALITY.

     I. STANDARD OF PROOF

     233  1. UNITED STATES EX REL. SMITH VS ROBINSON 495
F SUPP. 696, 701 (E.D. PA 1980) CONTRABAND CHARGE
#22 > WAS NOT SUPPORTED BY ANY EVIDENCE THAT SEIZED
ITEMS WERE REALLY CONTRABAND.

**EXHIBIT** B

| Printed on 9/23/05<br>at 11:02AM<br>by TP | **LOWELL COMMUNITY COUNSELING CENTER**<br>291 SUMMER ST.<br>LOWELL, MA. 01852<br>PHONE: (978) 458-4973<br>FAX: (978) 458-4975 |
|---|---|

| Order Type: NONE | Agency: | HOUSE OF CORRECTION |
|---|---|---|
| Accession: 57778 | | MAIN BUILDING |
| Donor ID: 106900 | Requesting Party: UNKNOWN | |
| Name: FERLAND, JAMES | Date Collected: 12/01/04 | |
| Control #: | Time Collected: 12:26 | |
| Test Date: 12/02/04 | Collected by: | |
| Test Time: 12:39 | Created by: JM | |

| Test | Result | Flag | Reference Range |
|---|---|---|---|
| AMPHETAMINE | -103 | NEGATIVE | |
| BARBITURATE | -109 | NEGATIVE | |
| BENZODIAZEPINE | -143 | NEGATIVE | |
| COCAINE | -34 | NEGATIVE | |
| OPIATE | -113 | NEGATIVE | |
| MARIJUANA | 97 | **POSITIVE** | |
| CREATININE | 141.9 | NORMAL | |

*Creatinine > or = to 20 is normal*
*Creatinnie < 20 is abnormal and diluted*
*Creatinine < 10 is forced dilution/possibly masking drugs*

*Positives Are Verified By Re-Test*

*Reviewed by: JM*    **FINAL REPORT**

(978) 162-9521

# EXHIBIT C

## MIDDLESEX COUNTY - OFFICE OF SHERIFF

### APPEAL FORM

INMATE: JAMES FERLAND  I.D.#: 106900  DATE: 12-3-04

DISCIPLINARY REPORT #: _____

If you wish to appeal the finding(s) or sanction(s) regarding the disposition of the Disciplinary Report identified above, complete this form and submit it to the Superintendent/designee within seven (7) days of receipt of the hearing results.

[ ] There was not substantial compliance with the Disciplinary guidelines.
[X] The decision was not based on substantial evidence.
[ ] The sanction(s) was not proportionate to the offense.
[ ] Other

INDICATE IN THE SPACE BELOW THE SPECIFIC GROUNDS FOR YOUR APPEAL

I AM WRITING TO YOU IN THE HOPE THAT YOU MODIFY THE SANCTIONS THAT WERE GIVEN TO ME. FIRST OF ALL HOW CAN I BE FOUND GUILTY WHEN DEPUTY SILVA TOLD ME THAT THE EVIDENCE HAD BEEN SENT TO THE STATE POLICE LAB TO SEE IF IT WAS REAL THAT'S LIKE GOING TO COURT AND THE JUDGE CONVICING AND SENTENCING YOU BEFORE HE SEES ANY EVIDENCE. SECOND I VOLUNTARILY ASKED TO TAKE A URINE WHICH CAME BACK NEGATIVE FOR COCAINE. LAST I AM 43 YEARS OLD AND I HAD MY 25 YEAR OLD BROTHER DIE FROM THAT SHIT, ALSO HOW AM I BREAKING RULE # 36 IF THE DEPUTY WAS NOT SURE IT WAS EVEN REAL

_James Ferland_     12-3-04
INMATE'S SIGNATURE     DATE

[X] UPHOLD DECISION OF DISCIPLINARY HEARING
[ ] MODIFY DECISION OF DISCIPLINARY HEARING: _____

_____     12-23-04
SUPERINTENDENT/DESIGNEE     DATE

B0042



# The Commonwealth of Massachusetts
## Middlesex Sheriff's Office

James V. DiPaola
Sheriff

## Policy and Procedure 430

## Inmate Rules and Discipline

### Table of Contents

.01    Date Revised
.02    Standards Referenced
.03    Policy
.04    Applicability
.05    Purpose
.06    Definitions
.07    Disciplinary Personnel
.08    Detection and Reporting of Disciplinary Offenses
.09    Responsibilities of the Disciplinary Officer
.10    Proceedings in Minor Matters
.11    Proceedings in Major Matters: Notice and Scheduling of Hearing
.12    Representation of Inmates and the Recording of Proceedings
.13    Disciplinary Board Hearing Procedures
.14    Fact Finding
.15    Witnesses and Informant Information
.16    Deliberation and Decision by the Disciplinary Board
.17    Record of the Disciplinary Board Hearing
.18    Appeal Procedure
.19    Placement on Awaiting Action Status/Transfer to Higher Custody
.20    Sanctions
.21    Restitution
.22    Code of Offenses
.23    Disciplinary Forms
.24    Time Limits
.25    Emergency Clause

necessary as outlined below, shall ask the inmate if he wishes to admit or deny the charges (enter a plea of guilty or not guilty). If the inmate enters a plea of guilty to the charges, the Disciplinary Board may consider mitigating evidence in imposing a sanction.

2.    Whenever an inmate is alleged to have committed a crime which may be referred to the District Attorney for prosecution, the Disciplinary Officer shall, prior to commencing the hearing, advise the inmate of his right to remain silent and that anything he says during the hearing may be used against him in court. If the inmate states that he does not wish to speak to the matter, the inmate shall not be asked to enter a plea nor answer any questions regarding the disciplinary offense.

3.    If the inmate does not admit the charges, the Disciplinary Board shall conduct a fact-finding hearing during which it may consider written, oral and physical evidence. All evidence considered by the Disciplinary Board shall be presented in the presence of the inmate except that informant information may be considered according to the procedures set forth below (430.15).

4.    The inmate shall be allowed, but shall not be compelled, to make an oral statement or to present a written statement in his own defense or in mitigation of the sanctions. An inmate's silence may be used to draw an adverse inference against him, but his silence shall not be the sole basis for a guilty finding.

## .15    Witnesses and Informant Information

1.    When the Disciplinary Board deems it appropriate and necessary to the hearing, the inmate may be allowed to call, confront and cross-examine witnesses. In ruling on such a request, the Disciplinary Board shall consider relevance, necessity and the effect on the safety and security of persons and the facility.

2.    The Disciplinary Board may call witnesses who may be questioned according to these procedures.

3.    In disciplinary cases involving informant information, the Disciplinary Board may consider documentary evidence and testimony which is not presented in the presence of the inmate only if after reviewing such documentary evidence or testimony the board has:

*Commonwealth of Massachusetts*
*Middlesex Sheriff's Office*

*Record of Disciplinary Hearing and Notice of Findings*

Name of Inmate:    Ferland,james          INSNO:    106900
Disc. Report Number:                      Hearing Date:  12/03/04       Time:    10am

*Check List*

1.  Was the inmate given at least 24 hours notice of his hearing? Yes X  No ☐  If no, include waiver with record.
2.  Was the inmate present before the Board? Yes X  No ☐  If no include waiver.
3.  Was the inmate advised of his right to remain silent? Yes  No  If yes, include Miranda Warning Record.
4.  Did the inmate request staff assistance? Yes ☐  No X  If yes, who assisted? _____
5.  Did the inmate request the presence of an Advisory Board Member? Yes X  No ☐
6.  Did the inmate request to:
    .   Make a statement? Yes X  No ☐
    .   Call witnesses? Yes ☐  No X
    .   Present other evidence? Yes ☐  No X
7.  Was the inmate advised of his right to appeal? YesX  No ☐

*Pleas and Findings*

        Plea:   Not Guilty X     Guilty

        Finding:   Not Guilty ☐     Guilty  X     Dismissed: ☐

*Summary of Evidence*

Evidence Relied upon to Support Findings

X Disciplinary Report              ☐ Reporting Officer's Testimony
  Inmate's Testimony               ☐ Other:       PHYSICAL EVIDENCE 2 ROCKS
☐ Testimony of Witnesses           _____

Summary of statement by inmate:       I SEARCHED THE ROOM I DIDN'T CHECK THERE

_____

_____

Summary of testimony and other evidence (use additional sheet if necessary):       _____

_____

_____

_____

_____



# The Commonwealth of Massachusetts
## Middlesex Sheriff's Office
## Disciplinary Hearing
## Summary

James V. DiPaola
Sheriff

INMATE: Ferland, James 106900

FINDING(S):
GUILTY:        25,36
NOT GUILTY:
DISMISSED:

SANCTION(S) AND RECOMMENDATION(S):
1.   25, 10days c/r
2.   36, 10days c/r
3.
4.
5.

EVIDENCE RELIED UPON TO SUPPORT FINDINGS:
| X | Disciplinary Report |
|   | Witness Testimony |
|   | Witness Statement(s) |
|   | Reporting Staff Member's Testimony |
|   | Other (describe):  Two rocks submitted as evidence |

REASON FOR SANCTION(S) AND RECOMMENDATION(S):
Time to reflect on choices you have made

The inmate has been advised of the Disciplinary Board's decision, appeal procedures, and a copy of this document and an Appeal Form has been provided to the inmate.

_____        December 3, 2004        10am
Staff Signature                           Date                        Time

Hearing Officer: _____        December 3, 2004
                              Signature                                  Date

DisciplinaryBoardFindings.doc 8/27/03

If any testimony or other evidence was excluded or if witnesses requested by the accused were not heard, list below stating the reasons for exclusion: _____

_____

_____

_____

_____

*Sanctions*

Sanctions for Each Offense:

| Offense: | Sanction: | |
|----------|-----------|---|
| 25 | 10 DAYS C/R | |
| 36 | 10 DAYS C/R | |
| | | |
| | | |

State the reasons why these sanctions were imposed:    TIME TO REFLECT ON YOUR DRUG USE

_____

_____

_____


Signature of Hearing Officer: _____ *Jack Crowley* _____

Date: _____ December 3, 2004 _____

## Narcotic Custody Form

The Commonwealth of
Massachusetts
State Police Crime Laborator
Evidence Unit:   508/358-315₅
Drug Unit:        508/358-316₄

**04-12297**

Sudbury Crime Laboratory

| Submitting Unit Name: | Drug Submission Number: |
|---|---|
| BH2 | BH2 |

Case Officer: EDWARD CONLEY

Agency Case Number: 106900BH2

Subject(1): JAMES M. FERLAND

Address(1): 34 ARROWHEAD ROAD
Bellingham, MA.

DOB: 11/20/61    SSN#: 039386735

Subject(2):

Address(2):

Case Type:   ☐ Purchase   ☑ Seizure   ☐ Discovery   ☐ Other _____

Date of Incident: 12/1/04    Time of Incident: 2:50 PM    Place of Incident: Cell I-4 Bellingham house of cell

Description of seized drugs, articles, implements, and/or paraphernalia:

Two small rock like items off white in color. each
packaged separately in Tcn off Baggie corner

| Date | Submitted by Whom (signature & printed name ) | Delivered to Where (printed location) | Delivered to Whom (signature) |
|---|---|---|---|
| 12/7/04 | ID # | S. P. Drug Lab Sudbury | |
| | ID # | | |
| | ID # | | |
| | ID # | | |
| | ID # | | |
| | ID # | | |

Authorization for Disposition of Drugs: In accordance with Chapter 94C Section 47A of the General Laws, drugs,
articles, implements, and/or paraphernalia, pertaining to the above defendant are hereby ordered to be delivered
to the Department Of Public Health for destruction or disposition in any way not prohibited by law.

| Court: | Date: | Signature of Justice/Clerk: |
|---|---|---|
| Disposition: | | |

SP295(8/02)        White/Original        Yellow/Submitting Agency        Pink/Crime Laboratory        Gold/Submitting Officer



*Middlesex Sheriff's Office*

## NOTICE OF TEMPORARY ASSIGNMENT TO
## ADMINISTRATIVE SEGREGATION

TO:   James Ferland                      106900
      NAME OF INMATE                     INSNO

FROM:  A.D.S. Peter Bolton

DATE:  December 20, 2004


You have been temporarily classified to the Administrative Segregation Unit as your continued presence in the general population may pose a serious threat to life, property, yourself, staff or other inmates, or to the security or orderly running of this facility.

A hearing will be held within 3 days (excluding weekends and holidays) to determine if you will remain in segregation 'or return to the general population. You will be asked to be present at this hearing.

If it is decided that you are to remain in segregation, your status will be reviewed weekly and you will be provided with an individual plan that you will need to follow in order to be returned to the general population.

---

*I have personally delivered a copy of this notice to the inmate named above on the following date and time.*

| Capt. Slatter | Capt. ___ | 12/20/04 | 8:45 | ☑ a.m. ☐ p.m. |
|---|---|---|---|---|
| PRINT NAME | SIGNATURE | DATE | TIME | |

cc:  Superintendent
     Assistant Superintendent
     Deputy Superintendent
     Director of Classification
     Segregation Unit Manager
     Segregation Folder

*Middlesex Sheriff's Office*
Segregation Classification

INMATE: Ferland, James     #: 106900

DATE: 12/21/04   TYPE: Initial     Review

DATE ADMITTED TO UNIT: 12/20/04

HOW ADMITTED:     ✓ Segregation Notice

✓ Completed Disciplinary Sanction

CURRENT STATUS LEVEL     I     II     III     N/A

COMMENTS: _____

_____

## RECOMMENDATION OF CLASSIFICATION COMMITTEE

Return to the general population

Classify/Remain in Administrative Segregation

## INDIVIDUAL SERVICE PLAN

Vote 3/0

Level I     Level II     Level III

Requirements: _____

_____

## BOARD MEMBERS

S/o Howes, , Deputy Silva, C/o Morrissey

## DECISION OF SUPERINTENDENT

Approve     Modify     Deny

Comments: _____

_____ Superintendent     12/23/04 Date



*The Commonwealth of Massachusetts*

*Department of State Police*

*Crime Laboratory*

*59 Horse Pond Road*

*Sudbury, Massachusetts 01776*

*Telephone (508) 358-3110 Facsimile (508) 358-3111*

**MITT ROMNEY**
*GOVERNOR*

**KERRY HEALEY**
*LIEUTENANT GOVERNOR*

**EDWARD A. FLYNN**
*SECRETARY*

**COLONEL THOMAS G. ROBBINS**
*SUPERINTENDENT*

| | | | |
|---|---|---|---|
| **Laboratory Case Number:** | 04-12297 | **Date:** | February 7, 2005 |
| **Defendant or Suspect:** | James M. Ferland | **Agency Case Number:** | 106900BH2 |
| **Agency:** | Billerica House of Correction (BH2) | | |

I hereby certify that the:      0.45 grams of yellow "rock" powder in the two (2) knotted plastic bags

Contained in the:      plastic evidence bag

Submitted to the laboratory for:      Officer Edward Conley

Date submitted to the laboratory:      December 7, 2004

Has been examined by me with the following results:

No Controlled Substances were detected. Also submitted were one Disciplinary report, one paper cup and one piece of paper.

*Nancy W. Brooks*

Nancy W. Brooks
Chemist

NWB:ast

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.
Nancy W. Brooks, whom I know to be a Chemist of the Massachusetts Department of State Police Crime Laboratory, appeared before me and affirmed the above to be the results made on Laboratory Number 04-12297.

Sworn and subscribed to before me on this ____9th____ day of ___February___ 2005.

CAROLINE A. TATRO
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 3, 2006

*Caroline A. Tatro*
Notary Public

Chapter 22C, Section 39
A certificate by a chemist of the department of the result of an analysis made by him of a drug furnished him by a police officer of the department, signed and sworn to by such chemist, shall be prima facie evidence of the composition, quality, and weight of such drug.

*Excellence In Service Through Quality Policing*

# 𝕷𝖊𝖌𝖆𝖑 𝕾𝖊𝖗𝖛𝖎𝖈𝖊𝖘
# 𝕸𝖊𝖒𝖔𝖗𝖆𝖓𝖉𝖚𝖒

To: James Ferland, B-21
From: Atty. Lee Gartenberg
Re: D-Board Appeal
Date: 1/14/2005

One of the two charges was overturned (violating laws of the Commonwealth) and the sanction was reduced by 10 days. The contraband charge was upheld because they had evidence that the cell was shaken down immediately prior to you being assigned there and the alleged contraband was found afterward.