UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-11217-NG

JAMES M. FERLAND,

Plaintiff

v.

PAUL NORTON, SGT. KENNETH SILVA,
OFFICER KEVIN SLATTERY, and JACK CROWLEY,

Defendants

**REPORT AND RECOMMENDATION ON**

**MIDDLESEX SHERIFF DEFENDANTS' MOTION TO
STRIKE AND TO DISMISS PLAINTIFF'S COMPLAINT[1]
(Docket # 16)**

ALEXANDER, M.J.

On October 18, 2005 *pro se* plaintiff James Ferland filed a complaint against defendants Paul Norton, Kenneth Silva, Kenneth Slattery and Jack Crowley (collectively, "the defendants"), prison officials at the Billerica House of Corrections ("BHOC") where Mr. Ferland was incarcerated beginning on

---

[1] Only individual defendants are named in the complaint. The "Middlesex Sheriff defendants" is a collective title that the defendants have used to identify themselves.

November 30, 2004.[2]  Mr. Ferland alleges that the defendants violated his constitutional rights in the handling of certain disciplinary actions that occurred during Mr. Ferland's incarceration.  Shortly after the defendants answered Mr. Ferland's complaint, Mr. Ferland filed an amended complaint.  The defendants then moved to strike the amended complaint and to dismiss Mr. Ferland's claims, and the District Court referred the motion to this Court for a Report and Recommendation.  After consideration of the parties' asseverations, and for the reasons set forth more fully below, this Court RECOMMENDS that the District Court treat the motion to dismiss as a motion for summary judgment and ALLOW the motion.[3]

## BACKGROUND

Upon his arrival at BHOC, Mr. Ferland was placed in Cell I-4 of the "New Man" section of the jail.  The following day, December 1, 2004, at approximately 2:50 p.m., Deputy Silva instructed correctional Officer Edward Conley to search Mr. Ferland's cell.  Officer Conley found two small "rock-like" substances in knotted plastic bags that appeared to be crack cocaine.  Mr. Ferland denied that the

---

[2]Since the filing of his complaint, Mr. Ferland has completed his sentence and is no longer incarcerated.

[3]To the extent that the defendants also seek to strike Mr. Ferland's amended complaint, that portion of the motion will be moot if summary judgment is granted.  The defendants would do well in the future not to combine a motion to strike or in opposition to an amended complaint with a dispositive motion to dismiss or for summary judgment.

bags belonged to him. Pursuant to departmental policy for the discovery of contraband, Mr. Ferland was strip searched and ordered to provide a urine sample for drug testing. Mr. Ferland's urine sample tested positive for marijuana and registered negative for cocaine, although the defendants claim that the cocaine reading was high enough to indicate that Mr. Ferland had ingested cocaine within the last twenty-four to seventy-two hours.

Mr. Ferland was then placed in the Disciplinary Detention Unit ("DDU") to await a disciplinary hearing on two institutional charges: # 25 – possession of anything, including money or currency not authorized for retention or receipt by the inmate; and # 36 – violating any law of the Commonwealth of Massachusetts or the United States of America. The defendants assert that institutional charge # 36 was predicated on the positive urine test result for marijuana, a violation of Mass. Gen. Laws ch. 94C, §§ 31 and 34. Mr. Ferland contends, however, that the defendants predicated institutional charge # 36 on possession of crack cocaine.

DDU is, according to the defendants, "a form of separation from the general population in which inmates committing serious rule violations are, by a decision of a disciplinary officer, confined to cells separate from the general population and whose privileges are restricted for a finite period of time." Defs.' Local Rule 56.1 Statement of Undisputed Facts (contained in Middlesex Sheriff Defs.' Motion to

Strike and to Dismiss Pl.'s Compl.) ¶ 14. Disciplinary hearings are conducted by the Disciplinary Board and are fact-finding hearings during which the Board may consider written, oral and physical evidence in the presence of the inmate.

The Disciplinary Board held a hearing on December 3, 2004, found Mr. Ferland guilty on the basis of Officer Conley's Disciplinary Report, and sentenced Mr. Ferland to two consecutive ten-day sentences in the DDU. Mr. Ferland's administrative appeal to Superintendent Norton was subsequently denied.

On December 20, 2004, after completion of his sentence in DDU, Mr. Ferland was classified to Administrative Segregation ("AdSeg"). AdSeg is a designated housing area for the temporary separation of inmates from the general prison population when the inmate's presence in the general population poses a threat to the institution. The defendants considered the discovery of the substances in Mr. Ferland's cell a serious breach of institutional security and therefore determined that "[Mr. Ferland's] continued presence in the general population pose[d] a serious threat to life, property, [him]self, staff, or other inmates or to the security or orderly running of th[e] facility." Defs.' Mot. Ex. 7, Deputy Peter Bolton's Notice of Temporary Assignment from DDU to the Administrative Segregation dated Dec. 20, 2004.[4] Deputy Silva determined the breach to be

---

[4]The defendants failed to number the exhibits included with their motion. For purposes of clarity, the Court has numbered the exhibits in the order submitted.

significant even if, as was actually the case, the "rock-like" substance turned out to be counterfeit because of concern about retaliation between inmates.[5] On January 12, 2005, Superintendent Norton approved Mr. Ferland's classification from AdSeg back to the general population.

Mr. Ferland alleges that the Disciplinary Board's hearing violated his due process rights under 42 U.S.C. §1983 and the 14th Amendment, and that his detention in the DDU and AdSeg was unconstitutional and caused him emotional distress. Although his original complaint was brought against the defendants only in their official capacities, his amended complaint seeks to name the defendants in their individual capacities. The defendants now move to strike the amended complaint and to dismiss all of the charges against them.

**ANALYSIS**

Although entitled "Motion to Strike and to Dismiss," the defendants' motion, which cites to Fed. R. Civ. P. 56 and Local Rule 56.1, actually appears to seek summary judgment. The defendants have included a Local Rule 56.1 statement of undisputed facts, required when moving for summary judgment, as well as documents not identified in the complaint that would, if considered by the Court, require the Court to convert the motion to one for summary judgment. See

---

[5]The "rock-like" substance was sent to the State Police Crime Lab for analysis on December 7, 2004, and ultimately came back negative for cocaine on February 7, 2005.

Alternative Energy v. St. Paul Fire & Marine, 267 F.3d 30, 33 (1st Cir. 2001) (consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment); Fed. R. Civ. P. 12(b) (if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."). The test for Rule 12(b)(6) conversion "is not whether supplementary materials were filed, but whether the court actually took cognizance of them, or invoked Rule 56, in arriving at its decision." Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 18-19 (1st Cir. 1992). The Court has done so here.

The Court is not required to give express notice of its intention to convert a motion to dismiss into a motion for summary judgment if the surrounding circumstances effectively place the parties on notice that the Court has the option of treating the motion as one for summary judgment and the parties have been given "reasonable opportunity to present all material pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). See also C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 43 (1st Cir. 1998). The defendants' prominent citations to Rule 56 and inclusion of a Local Rule 56.1 statement of undisputed facts alerted Mr. Ferland to the defendants' apparent intent to seek either dismissal or summary

judgment. Indeed, Mr. Ferland's opposition to the defendants' motion included a specific response to the Local Rule 56.1 statement. Furthermore, both parties indicated at the March 16, 2006, scheduling conference that after the extant motion is addressed, the case will be ready for trial. This is not a case, therefore, of incomplete discovery in which the non-movant would have no reasonable opportunity to obtain and submit additional evidentiary materials, but is, rather, a case where conversion from a Rule 12 motion to a Rule 56 motion is appropriate. Chaparro-Febus v. Int'l Longshoremen Ass'n, Local 1575, 983 F.2d 325, 332 (1st Cir. 1992). The Court therefore addresses the defendants' motion as one for summary judgment.

**Summary Judgment Standard**

The parameters in which this Court considers a motion for summary judgment are well-defined and familiar. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotations omitted). The party

moving for summary judgment bears responsibility for showing those portions of the discovery record that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

After the moving party has fulfilled this obligation, the burden shifts to the non-moving party to demonstrate that a trier of fact reasonably could find in its favor. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25); Ismert & Assoc., Inc. v. New England Mut. Life Ins. Co., 801 F.2d 536, 537 (1st Cir. 1986) (describing the non-moving party's burden as one of demonstrating that there is a need for further exploration of the facts). A party opposing a motion for summary judgment may not rest on mere allegations or denials, but rather, must show that specific facts illustrate a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In reviewing a motion for summary judgment and the materials offered to support the motion, the role of the Court is not to engage in an analysis of whose evidence is more compelling or credible. Cetronics Fin. Corp. v. El Conquistador Hotel Corp., 573 F.2d 779, 782 (2d Cir. 1978); Peckarsky v. Am. Broad. Co., Inc., 603 F. Supp. 688, 692 (D.D.C. 1984). "[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence." Anderson, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. at 255. See also Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 71-72 (D. Mass. 1998); Barretto-Rivera v. Medina-Vargas, 168 F.3d 42, 47 (1st Cir. 1999) ("speculation adverse to the nonmoving party is inappropriate on a motion for summary judgment"); Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) (in reviewing motions for summary judgment, "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). With these parameters in mind, the Court turns to the parties assertions.

Mr. Ferland alleges, pursuant to 42 U.S.C. § 1983 and the 14th Amendment, that his due process rights were violated when he was detained in the DDU and then placed in AdSeg. Although Mr. Ferland's due process rights do not disappear as a result of incarceration, a protected liberty interest must be implicated in order for him to be afforded the protections of due process. O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 135, 612 N.E.2d 641, 645 (1993).

Discipline of an inmate by prison officials that presents "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" may create a federally protected liberty interest. Sandin v. Conner, 515 U.S. 472, 484 (1995). When discipline is "within the range of confinement to be

normally expected," however, no liberty interest exists. Id. at 486-87 (inmate plaintiff's disciplinary segregation of thirty (30) days in solitary confinement did not afford him a protected liberty interest that would entitle him to protections of due process). Similarly, "administrative segregation does not involve a federally protected liberty interest because it is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." O'Malley, 415 Mass. at 136, 612 N.E.2d at 645 (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

Mr. Ferland's conditions of confinement in the DDU and AdSeg were within the normal parameters of prison life. Mr. Ferland received many amenities such as recreation outside of his cell for at least one hour per day, five days per week; access to basic personal items for use in his cell; the same rights to send and receive mail as the general population; telephone privileges when related specifically to access to judicial process and family emergencies; official visits when related specifically to access to judicial process; and reasonable access to legal and reading material. Although Mr. Ferland's segregation limited his privileges, temporarily, in comparison to the general prison population, it did not present any significant hardships that infringed any protected liberty interest.

Furthermore, Mr. Ferland's detention in AdSeg was discretionary, based on prison officials' decisions that Mr. Ferland posed a threat to the general prison population. AdSeg is similar to the transfer of inmates between prisons, which is not considered a liberty interest, because the classification decision is "a simple exercise of [the Superintendent's] administrative discretion." Dougan v. Comm' of Corr., 34 Mass.App.Ct. 147, 150, 607 N.E.2d 763,765 (1993) (quoting Jackson v. Comm' of Correction, 388 Mass. 700, 703, 448 N.E.2d 60 (1983)) (holding freedom from transfer is not a liberty interest because an inmate may be transferred at the whim of the Commissioner).

Finally, Mr. Ferland contends that mandatory language in the Middlesex Sheriff's Policy and Procedure 423H creates a protected liberty interest in segregation to the DDU and AdSeg. The case law that Mr. Ferland relies on in support of his position, however, is no longer valid. Mr. Ferland points to a footnote in O'Malley v. Sheriff of Worcester County, which, in turn, cites Hewitt, 459 U.S. at 472, as standing for the proposition that administrative segregation is an area where the Supreme Court has recognized a liberty interest created by state law and enforceable by prison inmates. O'Malley, 415 Mass. at 137 n.8, 612 N.E.2d at 646 n.8. Although the Supreme Court has recognized that states may, under certain circumstances, create liberty interests that are protected by the Due

11

Process Clause, the Court has abandoned the approach taken in <u>Hewitt</u> by limiting liberty interests and no longer finding that disciplinary or administrative segregation requires the protection of the Due Process Clause unless that segregation imposes an "atypical and significant hardship on the inmate." <u>Sandin</u>, 515 U.S. at 484. In light of <u>Sandin</u>, Mr. Ferland's averments are thus misguided. His segregation did not infringe upon a protected liberty interest, and his due process rights, therefore, were not violated.

**Conclusion**

For these reasons, the Court RECOMMENDS that the motion for summary judgment be ALLOWED.

SO ORDERED.

8/17/06
Date

United States Magistrate Judge

## **NOTICE TO THE PARTIES**

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court the District Court of Massachusetts, any party who objects to this proposed Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the proportions of the proposed findings, recommendations or report to which objection is made and the basis for such objection. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 273 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 687 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986).